524                    NASHVILLE :

WILLCOX v. LILLIE HINES.

(*Nashville.*    March  12,  1898.)

1. NEGLIGENCE.  *Of landlord in failing to repair renders him liable
   to tenant's guest, when.*

   One injured by the fall of a porch, which gave way while she was
   upon it, cannot recover upon the landlord's contract to repair
   made with the tenant in possession, and to which the person
   injured was not a party, but must base a recovery upon the
   ground that the landlord knew, or might by the exercise of
   reasonable diligence have known, of the dangerous and unsafe
   condition of the premises, of which the person injured had no
   knowledge and could not have had knowledge by the exercise
   of reasonable care.  (*Post, pp. 528, 529.*)

   Cases cited: Stenberg *v.* Willcox, 96 Tenn., 163: 26 Ohio St., 393
   (S. C., 20 Am. Rep., 767.)

2. SAME.  *Evidence that supports verdict against landlord for failure
   to repair.*

   A verdict in favor of one injured by the fall of a porch, due to
   the rotting away of the tenons of the supporting timbers, and
   against the owner of the leased premises, is supported by the
   evidence that the landlord's agent knew of the dangerous and
   unsafe condition of the porch, and that the landlord promised
   to place it in repair although the infirmity that led to the ac-
   cident was not called to his attention, and that he sent a man,
   who, after completing his work, pronounced it safe, when the
   defect could have been discovered by a carpenter of ordinary
   skill.  (*Post, pp. 529–531.*)

3. CHARGE OF COURT.  *Not erroneous for lack of evidence to support
   it, when.*

   An instruction that if a landlord saw that a porch was dangerous
   and agreed to repair it, but his workman left it unsafe, whereby
   the plaintiff was injured, she was entitled to recover, is not
   erroneous for lack of evidence to support it, where the landlord
   inspected the premises and protested the porch was safe, but
   promised to have it repaired as soon as the weather would
   permit.  (*Post, pp. 531, 532.*)

Willcox *v.* Lillie Hines.

4. SAME. *Not misleading, when.*

It will not be assumed that the jury were misled by an erroneous charge which was corrected by other instructions subsequently given, although the first charge was not withdrawn. (*Post, p. 532.*)

5. SAME. *Refusal of request not error, when.*

A judgment will not be reversed for the refusal of the trial Judge to give an instruction which is not strictly accurate. (*Post, pp. 536, 537.*)

Cases cited: Sommers *v.* Railroad, 7 Lea, 201; Railroad *v.* Gurley, 12 Lea, 46; Railroad *v.* Wynn, 88 Tenn., 332.

6. EVIDENCE. *Of agency properly submitted to jury, when.*

A disputed question of agency is properly submitted to the jury where a statement made by one who fixed the posts of a porch, which afterwards fell, to the plaintiff's injury, to the effect "now that is safe," is objected to on the ground that such workman was not the agent of the defendant who owned the property. (*Post, pp. 532–535.*)

Cases cited and approved: 33 N. J. L., 463 (S. C., 97 Am. Dec., 728); 78 Am. Dec., 390.

Cited and distinguished: Self *v.* State, 6 Bax., 244.

7. SAME. *Statement of third person inadmissible.*

Evidence that the sister of one injured by the fall of a porch had said that if it was not fixed somebody would' be hurt, is inadmissible to charge the one injured with knowledge of the unsafe condition of the porch. (*Post, p. 535.*)

8. SAME. *Preponderance defined.*

The preponderance of evidence does not mean the greater number of the witnesses merely. (*Post, pp. 535–537.*)

Cases cited: Coles *v.* Wrecker, 2 Leg. Rep., 14; Hills *v.* Goodyear, 4 Lea, 243.

---

FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County. JOHN W. CHILDRESS, J.

R. McP. Smith, W. D. Covington, Vertrees & Vertrees for Willcox.

Hamilton Parks, J. W. Gaines, and Edwin A. Price for Hines.

McAlister, J. The defendant in error, Miss Lillie Hines, recovered a verdict and judgment in the Second Circuit Court of Davidson County against the plaintiff in error for the sum of $4,500 damages for personal injuries. The Circuit Judge being of opinion the damages were excessive, a remittitur of $3,000 was entered by the plaintiff, whereupon the Court overruled the motion for a new trial and pronounced judgment in favor of the plaintiff for $1,500.

The facts from which this litigation was evolved were, briefly, viz.: In September, 1892, M. P. Hines and wife, Lucy S. Hines, father and mother, respectively, of Miss Lillie Hines, the defendant in error, rented of A. V. S. Lindsley, agent for J. M. Willcox, the plaintiff in error, a two-story dwelling house on the southwest corner of Church and McLemore Streets, in the city of Nashville. The tenants went into possession October 1, 1892, and had been occupying the premises for about eleven months when the accident happened. The members of the family, including the defendant in error, were seated upon the back porch when it suddenly gave way, precipitating the defendant in error and others violently to the ground, whereby they sustained serious personal injuries. The gravamen of the action

as outlined in the four counts of the declaration are, viz.:

(1) The plaintiff was living with her mother, Mrs. Lucy S. Hines, who rented the house under a contract with defendant that the same would be put in good, safe, and tenantable condition, and that the said Mrs. Hines, before she moved into the house, was assured by defendant that it had been put in good, safe, and tenantable condition, as promised and agreed.

(2) That the house, when rented to the plaintiff's mother, was in an unsafe and dangerous condition, which fact was unknown to plaintiff, and which she could not have known by the exercise of due care and diligence, but which unsafe and dangerous condition was known to defendant, who concealed and withheld the same from said Mrs. Hines and plaintiff.

(3) That after Mrs. Hines took possession of the house defendant visited the premises, and his attention being called to needed repairs, he promised and undertook to repair, and did repair, the same, but did so in a careless and negligent manner.

(4) That after Mrs. Hines took posession of the house, defendant undertook to repair and make safe said premises, and did repair the same, but did so in a careless, negligent, and unskillful manner.

Plaintiff further alleges that it was the duty and obligation of defendants, as landlords and owners of said property, of which her mother was tenant as aforesaid, to have put, kept, and maintained the

same in good, safe, and tenantable condition, suited to the uses and purposes for which the same was being occupied by her said mother and family. . . . Yet plaintiff avers that, in total disregard of her rights and their duties in the premises, said defendants carelessly, recklessly, and negligently allowed and permitted said property to remain in an unsafe, insecure, and dangerous condition, which said condition plaintiff did not know, but which defendant well knew, or ought to have known, and was by them negligently, willfully, and intentionally withheld, hidden and concealed from plaintiff, and in such a way as to mislead and deceive plaintiff with reference thereto.

"And plaintiff further avers that, for the purpose of misleading her with reference to the said condition of said property, said defendants falsely and fraudulently represented to her, and repeatedly assured her mother and herself that said property had been put and was in safe and tenantable condition, upon which representation and assurances on the part of said defendants plaintiff relied, as she had a right to do," etc.

In respect of the first count of the declaration, which alleges a contract to repair made by the agent of Willcox with M. P. Hines and wife, it suffices to say that Miss Lillie Hines was not a party to that contract. *Burdick* v. *Cheadle*, 26 Ohio St., 393 (S. C., 20 Am. R., 767). This question was considered by this Court in the case of *Stenberg* v.

Willcox v. Lillie Hines.

*Willcox*, 12 Pickle, 163, a suit growing out of the same accident, in which Mrs. Stenberg was injured. It was then said, viz.: "If plaintiffs can recover at all in this case, it must be upon the ground that the landlord leased premises in a dangerous and unsafe condition, when he knew, or might, by the exercise of reasonable diligence and care, have known, of such unsafe condition, and upon the further ground that plaintiff did not know of such unsafe condition, and could not have known of it by the exercise of reasonable diligence and care; and not upon any contract between the defendant and Mrs. Hines, of which Mrs. Stenberg may have known nothing, and to which she was not a party."

It is not necessary, therefore, to consider further the first count of the declaration.

The first assignment of error that will be considered is that there is no evidence to support the verdict.

It appears from the record that the porch in question was about twelve or thirteen feet in height, and that it was attached to the rear of the house, extending almost its entire width. There was a flight of stairs leading to a platform that connected with the main porch. This porch was supported by wooden posts and was joined to the house at the top, while the floor of the porch was supported by timbers which were mortised in the timber affixed to the wall of the house. The record shows that the collapse of the porch was due to the fact that the

16 P—34

tenons or ends of the timbers which fitted in the
mortises had rotted, thus destroying the support upon
which the floor of the porch rested. There was evi-
dence tending to show that this porch was very old.
and quite dilapidated. Mrs. Dunn, a former tenant
of the premises, had made complaint to the agent of
the condition of this porch, and the latter had prom-
ised to repair it. This witness also stated that the
agent of Willcox was frequently upon the premises,
and was well acquainted with the dangerous condi-
tion of the porch. There is also evidence tending
to show that after Mrs. Hines took possession of
the premises the attention of the landlord, Mr. Will-
cox, was called to the condition of this porch, and
that he pronounced it safe, but promised that when
the weather permitted he would have the porch put
in good and safe repair. It also appears that very
soon after this interview workmen went to the house
and repaired the porch by placing a wooden post
under one corner of it, and that a piece of tin was
placed over the roof at the point where it joined the
wall of the house, to prevent the rain from falling
through upon the porch. It is not claimed that the
attention of the landlord was challenged to the par-
ticular infirmity in the structure that caused it to
fall, but, on the contrary, plaintiff states that she and
her mother were both ignorant of this defect. There
is evidence, however, tending to show that any car-
penter of ordinary skill, in making repairs upon the
porch, would have discovered the dangerous condition

of the porch in the particulars just mentioned. It was argued that the carpenter sent by Willcox to repair the porch was his agent, and. that for his negligence or unskillfulness in failing to discover the defects and dangers of the porch Willcox is liable. There was also evidence to the effect that when this carpenter completed the work he said "the porch is all safe now." There was also evidence tending to show that John T. Lindsley, the agent of Willcox, had notice of the dangerous condition of the porch, and that he frequently promised to repair it during the occupation of the house by Mrs. Dunn. So that we find material evidence to support the finding of the jury.

The second assignment is, that the Court erred in charging the jury that "if defendant, Willcox, saw that the porch was dangerous, after the Hines tenants moved in, and agreed to send some one to repair the porch and put it in safe condition, but that his workman failed to put it in a safe condition, but left it unsafe, and in consequence thereof plaintiff was injured," she was entitled to recover. It is insisted this charge was erroneous for the reason there were no facts shown in evidence to support it. In this counsel are in error. Mrs. Hines testified that when the defendant, Willcox, came, and in person inspected the premises, his attention was called to the condition of this porch, and that, while protesting that it was safe, he promised to have it repaired as soon as the weather would permit. He

stated, to use the language of a witness, that he would "make it all safe and all." Moreover, counsel concede that the Court, by other instructions subsequently given, corrected the vice criticized in this charge. Their insistence is, that the Court failed to withdraw the first charge, and the jury were confused by two conflicting instructions. We cannot assume, however, that the jury were misled, for the reasons stated.

The third assignment is, that the Court erred in admitting testimony that after the post beneath the porch was fixed, the workman remarked: "Now, that is safe." On this subject the Court, in its fifth instruction to the jury, said, viz.: "If you believe, from the proof, that the carpenter was sent there for the purpose of making the repairs, by the defendant or his authorized agents in charge of the property, then the statement or assurance of said carpenter, while performing the carpenter's work, with reference to the porch being safe, on the completion of the work he had been sent to do, would be admissible, and such statements would be binding upon defendant; but if the proof fails to establish the fact to your satisfaction, that defendant or his authorized agents, etc., did send said carpenter upon the premises for the purpose of making the repairs upon said porch, then said carpenter was not the agent or representative of defendant, and defendant is not bound by anything done or said by said carpenter in making said repairs.

The evidence above mentioned. was objected to upon the ground that the Court must find, before admitting such declarations, that the negro who fixed the post was the agent of defendant. It being a matter of controversy upon the proof whether the negro post fixer was employed by the defendant, the Court declined to adjudge the question of agency, but left it as a disputed question of fact for the settlement of the jury. The alleged error of the trial Judge was in submitting the admissibility of testimony to the jury, and in not determining it himself. It is insisted that if the admissibility of testimony depends upon any fact, that fact must be found by the Court to exist. We are of opinion the ruling of the Circuit Judge was correct. In 1 Am. & Eng. Enc. L. (2 Ed.), p. 967, the rule is stated thus: "If the evidence adduced to support a claim of agency is undisputed, whether it exists or not, is one of law for the Court. Whenever it is disputed, however, it is one of mixed law and fact, for the consideration of the jury aided · by instructions from the Court."

In the case of *Gulick* v. *Grover*, 97 Am. Dec., 728 (S. C., 33 N. J. Law, 463), it was held that, "when the facts are undisputed, the question whether an agent has the requisite authority to bind his principal is a question of law for the Court, whether such authority is sought to be sustained by a previous authorization or by subsequent ratification."

In the case of *Savings Funds Society* v. *Savings*

*Bank*, 78 Am. Dec., 390, the Court said, viz.:
"If the authority (of the agent) be created by
power of attorney or other writing, the instrument
itself must, in general, be produced, and since the
construction of writings belongs to the Court, and
not to the jury, the fact and scope of the agency
are, in such cases, questions of law, and are prop-
erly decided by the Judge. But the authority may
be by parol, or it may be implied from the con-
duct of the employer in sanctioning the credit given
to a person acting in his name. . . . And in
all instances, whether the authority, general or special,
is to be implied from the conduct of the principal,
or where the medium of proof of agency is *per testes*
(by witnesses), the jury are to judge of the credi-
bility of witnesses and of the implications to be
made from their testimony. The Court then said
that, as the plaintiff did not produce any written
evidence of Easten's authority, it was the duty of
the Court to inform the jury what constitutes agency,
express or implied, special or general, and to refer
to them the questions: (1) Whether the evidence sat-
isfied them that Easten was either the general or
special agent of defendants; and (2) whether the issu-
ing of the certificate in suit was within the scope
of his authority?" Mechem on Agency, Sec. 106.

It is true this Court decided in *Self* v. *State*,
6 Bax., 244, that where confessions are offered as
evidence, their competency becomes a preliminary
question to be decided by the Court. This imposes

on the trial Judge the duty of deciding the fact whether the party making the confession was influenced by hope or fear. This rule is so well established, that if the Judge allows the jury to determine the preliminary fact, it is error for which the judgment will be reversed. But this exception is recognized only in criminal cases, and is made in favor of life and liberty. In such cases the only preliminary question settled by the Court is, whether the confession was voluntary or made under duress.

The fourth assignment is, the Court erred in excluding the testimony of Dr. Halley, a reporter for the *American*, who called at the Hines residence just after the accident "to write it up." Witness talked with Miss Mamie Hines, an inmate of the house, and plaintiff's sister, who told him she had known, or had said, that if that porch wasn't fixed somebody would be hurt. The object of introducing this evidence was to show that the unsafe condition of the porch was a fact within the knowledge of at least one of the inmates of the house, and that such fact should have been known by plaintiff. If this evidence was competent for any purpose, it should have been proved by Mamie Hines, who was not offered as a witness. But we fail to preceive how plaintiff could be affected by the knowledge of her sister in respect of the unsafe condition of the porch, and we think the evidence was properly excluded.

The fourteenth assignment is that the Court erred in refusing the following request, to wit: "The jury

should be governed in their finding by the preponderance of the evidence, and this does not mean the number of the witnesses, but the greater weight of the testimony, everything being considered which it was proper to consider."

This request is not strictly accurate on its face, since the preponderance of evidence may be determined, under certain conditions, by the number of witnesses testifying to a particular fact or state of facts. For instance, "one or two witnesses may testify to a given state of facts, and six or seven witnesses, of equal candor, fairness, intelligence, and truthfulness, and equally well corroborated by all the remaining evidence, and who have no greater interest in the result of the suit, testify against such state of facts, then the preponderance of the evidence is determined by the number of witnesses." Sackets' Instructions to Juries, 39. It is well settled, however, that by the term preponderance of evidence is not meant the mere numerical array of witnesses, but it means the weight, credit, and value of the aggregate evidence on either side." *Coles* v. *Wrecker*, 2 Tenn. Leg. Rep., 14; *Hill* v. *Goodyear*, 4 Lea, 243.

The Court in the present instance was requested to charge that the preponderance of evidence does not mean the number of the witnesses, etc. If the request had stated that preponderance did not mean the number of the witnesses merely, it would have been accurate. A reversal will not be made for refusal

of trial Judge to give an instruction, unless it is strictly accurate. *Sommers* v. *Railroad*, 7 Lea, 201; *Railroad* v. *Gurley*, 12 Lea, 46; *Railway Co.* v. *Wynn*, 88 Tenn., 332. The Court in this case charged that the burden of proof rested upon plaintiff to establish her case by a preponderance of the evidence. The Court also charged that the jury were to dispassionately weigh all the evidence, "giving such weight to the several witnesses as their character, intelligence, manner of deposing, general bearing, relationship, consistency or inconsistency of statements may appear. . . . If possible, try and reconcile all the statements, so that all may appear to have told the truth." We think in these instructions the trial Judge, in effect, told the jury that the preponderance of evidence did not consist alone in the numerical array of witnesses, but was to be determined upon a consideration of the character of the witnesses, their intelligence and interest, etc.

The remaining questions arise upon the charge of the Court, which is in strict accord with the principles laid down in *Hines & Stenberg* v. *Willcox*, reported in 12 Pickle. Judge Beard and the writer are of opinion those cases were erroneously decided and should be overruled. A majority of the Court, however, adhere to those rulings, and the result is the present judgment is affirmed.