OTIS E. HULL and Guy Beaty, Complainants-Appellees,
v. SAM C. EVANS and Union Bank, Defendants-Appellants.—439 S.W.2d 110.

Middle Section. October 25, 1968.

Certiorari Denied by Supreme Court March 17, 1969.

194

Neal & Craven, Jamestown, for complainants-appellees.

Stone & Bozeman, Knoxville, for defendants-appellants.

TODD, J. Defendant, Sam C. Evans, has appealed from a decree of $12,500.00 in favor of complainants, Otis E. Hull and Guy Beaty. Defendant, Union Bank, was dismissed and is not before this Court on appeal.

The original bill alleged that defendant was engaged in selling stock in a new corporation; that he made an engagement to meet with complainants and one Escol

Norman to discuss his purchase of said stock; that Norman was prevented from attending the meeting; that defendant brought to said meeting a stock certificate made out to Norman for 5,000 shares of stock; that defendant pursuaded complainants to advance the sum of $12,500.00 as the purchase price of said 5,000 shares of stock and to attempt to deliver said stock certificate to Norman and obtain their $12,500.00 from him; that defendant promised to refund the $12,500.00 if Norman did not accept and pay complainants for the stock; that Norman refused to accept and pay for the stock; and that defendant refused to refund the $12,500.00 as agreed.

Defendant's answer denied that he promised to refund, and plead the statute of frauds.

After an oral hearing, the Chancellor commented as follows:

"There is no escaping, insofar as I am concerned, in holding that the greater weight of the evidence has been carried by the complainants in this matter. I am forced to the opinion that a preponderance of the evidence is to the effect that the conversation was as outlined by Mr. Hull and by Mr. Beaty and by Mr. Greer. * * *"

Defendants' first assignment of error is as follows:

"1. The Court erred in finding that '* * * [A] preponderance of the evidence is to the effect that the conversation was as outlined by Mr. Hull and by Mr. Beaty and by Mr. Greer.' [Tr., p. 158.]"

Complainants offered four witnesses, and defendant alone testified on his own behalf.

Complainant O. E. Hull testified in part as follows:

"Well, while we was sitting in the plane, he told Mr. Beaty and I, 'If we would take the stock and deliver it to Mr. Norman, if Mr. Norman wouldn't accept the stock that he would take it back, refund us our money. That there were a lot of people that wanted stock and it would be no trouble for him to sell it to someone else.' "

Complainant, Guy Beaty, testified in part as follows:

"Well, he told us, 'If we would take it and pay for it and then if Mr. Norman didn't want it, he said that he could sell it to somebody else or we would get our money back.' "

\* \* \* \* \* \*

"Well, if Mr. Norman didn't take the stock that he was to sell it to somebody else or give us our money back; but I didn't want no more. And I explained at that time, 'I didn't.' "

Complainant's witness, Manning Greer, testified in part as follows:

"Q What did Mr. Evans say in that regard about the fact that Mr. Norman was not there?

 A Well, he tried to get these boys to take the stock until they could contact Mr. Norman and they didn't agree to take it from what I heard, but he did tell them that if they would take the stock and he would refund their money if he did not want it."

"Q Well, what did they say about Escol Norman?

 A Well, they said, 'That Mr. Norman couldn't be there on account of his sister dying' and Perk (Evans) asked them 'If they would pay him for

the stock' and he said, 'If he didn't want it, he would give * * * take their place * * * refund their money. I believe is the way * * *' "

Escol Norman testified only that he refused to buy the stock and was not present at the meeting at the airport.

The defendant, Sam C. Evans, testified that he had the stock certificate issued to Norman at the request of Hull, that he made no promise to refund the $12,500.00, and that Hull and Beaty had agreed to buy the stock themselves if Norman did not.

Complainants each testified that they did not agree to buy the stock if Norman did not buy it.

Complainant's version of the transaction, that defendant promised to refund the $12,500.00, is supported by the testimony of both complainants, and corroborated in part by the witness, Greer.

Defendant's version that he did not promise a refund and that complainants agreed to buy the stock is supported only by the testimony of defendant, himself.

Complainants' denial of any agreement to purchase is supported by the testimony of two complainants, both of whom were present at the transaction.

■ Defendant insists that his testimony is corroborated by the fact that complainant Hull retained possession of the stock certificate and that there was considerable delay before complainants demanded the refund. These circumstances are of little or no weight because of the admitted relationship of the parties, involving long acquaintance and implicit confidence, together with the leisurely business procedure practiced by the parties in most of the transactions described in this record.

■ The preponderance of evidence does not mean the greater number of witnesses merely. Wilcox v. Hines, 100 Tenn. 524, 45 S.W. 781 (1898); but under certain conditions, the preponderance may be determined by the number of witnesses testifying to a particular fact or state of facts. Ibid.

"* * * For instance, 'one or two witnesses may testify to a given state of facts, and six or seven witnesses, of equal candor, fairness, intelligence, and truthfulness, and equally well corroborated by all the remaining evidence, and who have no greater interest in the result of the suit, testify against such state of facts. Then the preponderance of the evidence is determined by the number of witnesses. Sack[ets'] Instruct[ions to] Juries, 39.'" 100 Tenn. at 536. 45 S.W. at 784.

In Gribble v. Ford, Court of Chancery Appeals of Tennessee, December 3, 1898, 52 S.W. 1007, two plaintiffs testified in their own behalf and were directly contradicted by one of the defendants. The Court said:

"This makes a square issue of fact between the parties. Two swear one way, and one swears the other way. Neither of the parties being in any way impeached as to their veracity, it is not a difficult matter to determine where the preponderance of the evidence is. Obviously, nothing else appearing, the weight of the evidence is with the complainants. If we look to the surroundings of the parties, their situation, and such connected circumstances as appear in the record, we find some things to sustain the direct swearing of both sides to the controversy. After a most careful review of the evidence, and giving each of the witnesses full credit for honesty of intent and purpose of testifying, we feel constrained, under the established rules

of law governing in such instances, to hold and find as a fact that the complainants Gribble and Webb have made out their case as to this item of their suit. * * *''
52 S.W. at 1009, 1010.

█ The record in the present case discloses a situation identical with Gribble v. Ford in that none of the witnesses were discredited. With full credit accorded to all witnesses, the numerical superiority and preponderance of evidence is with the complainants.

Defendant relies upon the authority of Cooper v. State, 123 Tenn. 37, 138 S.W. 826 (1909), wherein two joint defendants insisted that their testimony was numerically superior to the single witness for the state. Eighteen pages of the opinion are filled with an account of circumstances contradicting the testimony of the defendants in addition to which the single witness for the state was completely disinterested. Furthermore, a jury and trial judge had elected to accept the testimony of the disinterested witness in preference to that of the two defendants. Cooper v. State is not controlling in the present case wherein the defendant himself was his only and vitally interested witness, and was not corroborated by any appreciable circumstances.

█ The Chancellor in the present case has seen fit to give greater weight to the testimony of complainants. In a case tried in equity upon oral testimony, without a jury, the decision of the Chancellor as to credibility of witnesses is final and not subject to review in an appellate court. Early v. Street, 192 Tenn. 463, 241 S.W.2d 531 (1951); Allen v. Goldstein, 40 Tenn.App. 308, 291 S.W.2d 596 (1956); Hall v. Britton, 41 Tenn.App. 72, 292 S.W.2d 524 (1953).

The first assignment of error is respectfully overruled.

The second assignment of error is as follows:

"2. The Court rendered a voidable, if not a void, decree in that the pleadings and proof are not capable of supporting a decree in favor of Complainants against Defendant Sam C. Evans."

 The substance of the original bill, quoted above, substantiated by competent and credible evidence, supports the decree of the Chancellor which reads in part:

"* * * Upon due consideration the Court is of the opinion that the allegations contained in the bill are true and that *based upon the facts of the case,* the defendant is justly indebted to the complainants in the sum of Twelve Thousand, Five Hundred ($12,500.00) Dollars and has been so indebted since September 25, 1966." (emphasis supplied)

 A plaintiff may recover by a simple statement of the facts, be they what they may, if the facts entitle him to recover in any form. Sec. 20-803 TCA, Jerman v. Stewart, Gwynne & Co., 12 F. 266 (C.C. 1882); Hall v. Memphis & C. R. Co., 15 F. 57 (C.C.1882).

Complainants stated the facts in their bill and testimony and, "based upon the facts of the case", the Chancellor found for the complainants.

Defendant insists that complainants' suit appears to be an action "for money had and received", whereas the evidence shows that the $12,500.00 was received by the corporation, and not by defendant. This insistence cannot prevail because the suit is not an action "for money had and received", but, as stated in the decree it is

"based upon the facts of the case", that is, that defendant made a special and personal promise to pay.

Defendant insists that the liability for refund, if any, rests upon the corporation and not upon the defendant Evans, individually. There is no evidence in the record that any promise was made by the corporation to refund anything. So far as the corporation is concerned, it issued 5,000 of its shares to Escol Norman and received payment of $12,500.00 therefor. Nothing occurred to obligate the corporation to make refund of the purchase price of its stock.

The obligation relied upon in the original bill, sustained by the preponderance of the evidence, and enforced by the decree, was that obligation which defendant, Evans, assumed when he promised the refund to complainants in order to induce them to part with their $12,500.00.

Defendant insists that a suit for refund of purchase price should be accompanied by a tender of the article purchased. This is generally true. In the present case, tender was not demanded in any plea. The stock certificate is a part of this record as an exhibit. The sworn testimony of Escol Norman disclaims any interest therein. Furthermore, defendant indicated his willingness and ability to transfer record ownership of the stock without regard to the outstanding certificate. On November 25, 1966, defendant wrote to complainant Hull, as follows:

"Dear Odis: I have your letter of November 22, acknowledging receipt of your Dumond Aircraft Corporation certificate, in lieu of the S. Evans Corporation certificates. Since we received no acknowledgement or word from you or anyone else regarding receipt and

acceptance by Mr. Norman of the certificate, we proceeded according to the prior agreement and our corporate records reflect that you and Guy Beaty are the purchasers and owners since you were the ones who paid for the stock. * * *''

The decree is adequately supported by the allegations of the original bill and the evidence.

The second assignment of error is respectfully overruled.

The third assignment of error is as follows:

''3. The Trial Court erred in not finding for the Defendant Evans on his pleading of the Statute of Frauds.''

Defendant in his amended answer relied upon T.C.A. Section 23-201(2) and (5) which reads as follows:

''No action shall be brought:

\*　\*　\*　\*　\*　\*

(2) Whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person.

\*　\*　\*　\*　\*　\*

(5) Upon any agreement or contract which is not to be performed within the space of one (1) year from the making thereof;

Unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized.''

Defendant insists that the complainants' version of the transaction amounted to an agreement by Evans to answer for the debt of Norman.

There is evidence that Norman was "interested" in buying some stock and that complainants "thought" he would buy but there is no evidence of an agreement by Norman whereby he became "indebted" to anyone as a result of the issuance of the stock certificate in his name. Until Norman ordered the stock, ratified its issuance, or accepted the certificate, there could be no obligation on his part to pay anyone anything for the stock. There being no debt of Norman, the promise of Evans could not be a promise to answer for Norman's debt. Neither was there any legal obligation of the corporation to refund money paid for the issuance of its stock, hence the promise of Evans could not be to answer for the debt of the corporation.

The promise of Evans was not a secondary obligation, but was a primary, direct undertaking to pay money on a condition, i. e., that Norman not accept and ratify the issuance of the stock to him.

Each of the cases cited by defendant under section (2) of the statute involves circumstances wherein there was a principal obligation of a third party which was orally assumed by defendant. Such cases cannot control in the present case where there was no obligation save that of the defendant.

In the case of Williams v. McElhaney, 203 Tenn. 602, 315 S.W.2d 106 (1957) it was held that if an employer promised his employee that he would pay any damage sustained by negligence of a fellow employee, such a promise was not to answer for the debt or default of another, but was a direct obligation of the employer, and

the statute of frauds (T.C.A. Sec. 23-202(2) was not applicable.

■ Section (5) of the Statute of Frauds is inapplicable to the present case because no part of the promise of the defendant was to be performed more than one year after the promise.

As stated in Boutwell v. Lewis Bros. Lumber Co., 27 Tenn.App. 460, 182 S.W.2d 1 (1944):

> "[2] The term 'to be performed within one year from the making thereof' has been construed to mean that the contract, by express appointment or understanding of the parties, is not to be performed within a year. See Johnson v. Cincinnati, N. O. & T. P. R. Co., 146 Tenn. 135, 147, 240 S.W. 429, 432, where, apropos here, it was said: '* * * it must appear either from the inherent nature of the contract, or from the words or actions of the parties at the time, that such an understanding was a part and parcel of the agreement itself.'

■■ The mere fact that the contract might continue for more than a year does not bring it within the statute, as for example, where the agreement is to continue during the life of the promisee. East Tennessee, V. & G. R. Co. v. Staub, 75 Tenn. 397. Nor is improbability of performance sufficient if the contract is susceptible of being performed within the year:

> 'The question is not what the probable, expected, or actual performance of the contract may be, but whether, according to the reasonable interpretation of its terms, it requires that it should not be performed within the year. Unless the court, looking at the contract in view of the surroundings, can say that in no reasonable probability can such agreement be per-

formed within the year, it is its duty to uphold the contract.' 37 C.J.S., Frauds, Statute of, Sec. 53, p. 561.''

The defendant's third, and last assignment of error is respectfully overruled.

Each of defendant's assignments of error has been considered, discussed and overruled. The entire record has been weighed as to the overall justice of the case. The decision of the Chancellor is in accord with the law and evidence and is just. It is therefore affirmed. Costs of this appeal are taxed against the defendant-appellant.

Affirmed.

Shriver, P. J. (M. S.), and Puryear, J., concur.