IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 7, 2026 Session

## WILLIAM WOODALL v. ROBERT D. COOPER ET AL.

**Appeal from the Chancery Court for Wilson County**
**No. 2021-CV-198   Charles K. Smith, Chancellor**

---

### No. M2024-01151-COA-R3-CV

---

This is an action to enforce an oral agreement for the transfer of stock in a corporation formed to purchase a parcel of commercial real estate. The plaintiff alleged that he helped obtain financing for the purchase in exchange for 50% of the company. The defendants alleged that the plaintiff had only an option to buy a 50% interest within one year of closing. The trial court credited the plaintiff's testimony and awarded him a judgment for his share of the company's profits. This appeal followed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., C.J., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Angello Lin Huong, Lebanon, Tennessee, for the appellants, Cooper & Woodall Properties, Inc., and Robert D. Cooper.

Joshua Adam Jenkins, Murfreesboro, Tennessee, for the appellee, William Woodall.

### OPINION

#### FACTS AND PROCEDURAL HISTORY

In 2003, Decade Properties, Inc., purchased a parcel of land on Jefferson Pike in LaVergne, Tennessee ("the Property"). The Property was improved with two buildings: a 12,000 square-foot building known as 162A and an 8,400 square-foot building known as 162B. Decade later leased 162A to William Woodall ("Plaintiff") for use as a metal fabrication shop. The lease gave Plaintiff an option to purchase the Property *en toto* sometime in the future.

In early 2011, Plaintiff began discussions with one of Decade's shareholders, Robert D. Cooper, about forming a new company to buy the Property. Decade was dissolving, and Mr. Cooper would be receiving the Property as his share of the company's assets. The

Property, however, was subject to a lien held by Pinnacle Bank, and Mr. Cooper would have to pay $560,500 to obtain Pinnacle's consent to the transfer.[1]

In May 2011, Mr. Cooper incorporated a company to buy, own, and manage the Property. Mr. Cooper named the company Cooper Woodall Properties ("CWP"), but he did not list Plaintiff as a shareholder, officer, or director on CWP's corporate documents. CWP then entered an agreement to buy the Property from Mr. Cooper for $800,000.

In July 2011, both Plaintiff and Mr. Cooper attended a closing at which the Property was conveyed from Decade to Mr. Cooper and from Mr. Cooper to CWP. CWP financed its purchase with a $640,000 loan from Pinnacle.[2] Mr. Cooper then used his proceeds to pay off the existing lien and to make the $160,000 down payment for CWP.[3] Even though Plaintiff was not a named shareholder of the company, he executed a personal guaranty for the loan, was listed as an "owner" on the bank's appraisal report, and was named as an authorized signer on CWP's bank account.

Before CWP's purchase, Plaintiff was paying some $4,700 per month in rent to Decade. After CWP's purchase, Plaintiff began paying $5,350 per month to CWP— roughly the same amount as CWP's mortgage payments. CWP also collected $2,000 a month in rent from the tenant of 162B. CWP used its revenue to pay the mortgage, taxes, insurance premiums, and maintenance expenses.

Ten years later, in May 2021, CWP notified Plaintiff that he owed some $73,000 in unpaid "rent" due to partial or missed payments in 2018, 2019, and 2020, which constituted a default under the lease. Around the same time, the General Sessions Court for Wilson County, Tennessee, entered an agreed order in Mr. Cooper's divorce proceedings requiring Mr. Cooper to sell the Property.

After receiving the default notice from CWP, and learning about the divorce court order compelling the sale of the Property, Plaintiff commenced this action against CWP and Mr. Cooper (collectively, "Defendants") by filing a verified complaint for declaratory

---

[1] Decade's mortgage had a remaining balance of $1.2 million and was secured by multiple properties. In an assumption agreement, Pinnacle agreed to release its lien on the Property for a payment of $560,500 and allow Mr. Cooper's former business partner to assume the mortgage for the remaining properties.

[2] The trial court's Final Order incorrectly states that Mr. Cooper "obtained the Property with a loan in the amount of $480,000." A loan settlement statement entered into evidence shows that the amount was $640,000.

[3] According to the Loan Settlement Statement, Mr. Cooper's $160,000 contribution and his $560,500 payoff were debited from the amount due to him as the seller. After these and other costs were deducted, Mr. Cooper was left with about $50,000 in cash from the sale to CWP.

judgment, breach of contract, and to quiet title to the Property. Plaintiff alleged that he and Mr. Cooper agreed that each would own 50% of CWP, with Mr. Cooper contributing the down payment and Plaintiff executing the personal guarantee. Thereafter, Plaintiff would pay the mortgage, and Mr. Cooper would collect rent on the second building until he recovered his down payment. According to Plaintiff, Mr. Cooper had recouped his contribution but still refused to recognize Plaintiff's interest in CWP. Based on these and other allegations, Plaintiff sought a declaration that he was a 50% owner of CWP and a monetary award for his share of CWP's profit.

In their Answer, Defendants admitted that Plaintiff and Mr. Cooper entered into an oral agreement to form CWP to buy, own, and manage the Property. But Defendants averred that the agreement merely gave Plaintiff an option to buy into the company within one year of closing. Because Plaintiff never exercised his option, Defendants averred that he was simply a month-to-month tenant.

While the action was pending, CWP sold the Property for $1.6 million.

At trial in September 2023, Plaintiff testified that the idea of buying the Property arose in early 2011 when a friend at Pinnacle Bank suggested that he apply for an owner-occupied loan to purchase the Property. Plaintiff could afford the monthly payments but not the down payment. So Plaintiff spoke with Mr. Cooper about buying the Property together. Plaintiff testified that he would "get half the company once the other tenant pa[id]" enough rent to reimburse Mr. Cooper for the $160,000 downpayment he made for CWP.

For his part, Mr. Cooper testified that Plaintiff had only an option to buy a 50% interest in CWP for $200,000. Mr. Cooper denied that he was going to recoup his down payment by collecting rent from 162B. Regardless, Mr. Cooper said that he never paid himself from CWP because the company made little to no profit. Plaintiff's payments were going toward the mortgage, and the payments from 162B were going toward property taxes, insurance, and other operating expenses. According to Mr. Cooper, Plaintiff guaranteed CWP's loan because Plaintiff was renting one of the buildings, and Plaintiff was an authorized signatory on CWP's bank account so that he could deposit his rent payments.

In its Final Order, the trial court found that Plaintiff owned 50% of CWP and was therefore entitled to 50% of the profit from the sale of the Property. The court reasoned as follows:

> Based on the evidence submitted at trial, pursuant to [Plaintiff]'s declaratory judgment claim, the Court finds and declares that [Plaintiff] and Mr. Cooper were fifty/fifty (50/50) owners in the Company and, as a result, the Property. That was the intent of the parties from the beginning.

- 3 -

[Plaintiff] testified that there was a lease purchase agreement [with Decade] for the Property, he was listed as a guarantor and owner with the bank during the purchase, and his name was part of the name of the Company. In addition, Mr. Cooper testified [Plaintiff] was a 50/50 owner upon payment of the funds. As a result, [Plaintiff] is entitled to his share of the proceeds from the sale of the Property, subject to certain credits and debits.

Based on these and other findings, the trial court awarded Plaintiff a judgment against Mr. Cooper for $531,236.21. This appeal followed.

## ISSUES

Defendants raise five issues on appeal:

(1) Whether the trial court erred in determining that Plaintiff had a shareholder interest in CPW.

(2) Whether Plaintiff should be judicially estopped from claiming he was anything other than a tenant of the premises.

(3) Whether the trial court placed disproportionate weight on Plaintiff's purported lease/purchase agreement and should have barred it under Tennessee's Statute of Frauds.

(4) Whether Plaintiff's purported shareholder agreement with Mr. Cooper also failed to meet the requirements of the Statute of Frauds.

(5) Whether the trial court incorrectly utilized the exception of partial performance in order to avoid application of the Statute of Frauds.

## STANDARD OF REVIEW

"Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We review the trial court's conclusions of law de novo with no presumption of correctness. *Brown v. HDR Logistics, LLC*, 714 S.W.3d 506, 515 (Tenn. Ct. App. 2024) (citing *S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)).

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Defendants contend that Plaintiff failed to prove his claim for a 50% interest in CWP. But as an initial matter, the parties disagree on the applicable standard of proof. Defendants assert that Plaintiff was required to prove his claim by clear and convincing evidence because Plaintiff sought to enforce an implied partnership agreement. Plaintiff asserts that he was required to prove his claim by only a preponderance of the evidence because his claim was subject to the general standard of review for actions to enforce an oral contract.[4]

A. Standard of Proof

"[T]he classification of [a] claim determines the standard of proof required to substantiate that claim." *Romglobal, Inc. v. Miller*, No. E2019-00058-COA-R3-CV, 2020 WL 476904, at *4 (Tenn. Ct. App. Jan. 29, 2020). Generally, a plaintiff must prove the existence of an enforceable contract by a preponderance of the evidence. *Next Generation, Inc. v. Wal-Mart, Inc.*, 49 S.W.3d 860, 864 (Tenn. Ct. App. 2000). But a plaintiff must prove the existence of an unwritten or implied partnership agreement by clear and convincing evidence.[5] *Baggett v. Baggett*, 422 S.W.3d 537, 544–45 (Tenn. Ct. App. 2013).

When classifying a claim, "we are not limited by the manner in which the parties have designated the claims, but make our own independent determinations of the nature and substance of claims asserted." *Curtis v. Parchman*, No. M2013-01489-COA-R3-CV,

---

[4] Plaintiff also contends that there was sufficient evidence to find the existence of a contract implied in fact and a contract implied in law. We pretermit these arguments because we have resolved the issue on other grounds. We also note that Plaintiff did not raise these issues in the trial court. *See Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012) ("[I]ssues are properly raised on appeal . . . when they have been raised and preserved at trial . . . ." (footnote omitted)); *id.* at 334 n.3 ("Issues not raised in the trial court . . . may be deemed waived when presented to this Court.").

[5] Tennessee's jurisprudence does not articulate the reasons for requiring a heightened standard of proof in implied partnership cases. Generally, civil cases must be proven by a preponderance of the evidence unless a statute requires otherwise or there are important policy reasons for imposing a heightened standard. *See Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 340–41 (Tenn. 2005). Even so, our courts have extended the heightened burden of proof for establishing an implied partnership to claims to prove the existence of an implied joint venture, *see Via v. Oehlert*, 347 S.W.3d 224, 230 (Tenn. Ct. App. 2010), and claims to prove the existence of an implied membership interest in an LLC, *see Romglobal, Inc.*, 2020 WL 476904, at *4. Tennessee's application of the clear-and-convincing standard puts it in the minority. *See Weiner v. Fleischman*, 816 P.2d 892, 898–99, 898 n.3 (Cal. 1991) (en banc) (noting that 19 of the 24 states that had considered the question at the time used the preponderance standard and finding "no compelling reason to assign a higher burden of proof to partnerships or joint venture agreements than any other oral contract").

- 5 -

2014 WL 819424, at *6 (Tenn. Ct. App. Feb. 27, 2014) (quoting *Est. of French v. Stratford House*, 333 S.W.3d 546, 557 (Tenn. 2011)). In other words, we must determine the gravamen of the claim. *See Jones by & Through Sons v. Life Care Centers of Am.*, No. M2022-00471-COA-R3-CV, 2023 WL 3476523, at *4 (Tenn. Ct. App. May 16, 2023) ("Gravamen is '[t]he substantial point or essence of a claim, grievance, or complaint.'" (quoting *Gravamen, Black's Law Dictionary* (11th ed. 2019)). To determine the gravamen of a claim, a court "must first consider the legal basis of the claim and then consider the type of injuries for which damages are sought." *Benz-Elliott v. Barrett Enters., LP*, 456 S.W.3d 140, 151 (Tenn. 2015) (citation omitted).

The legal basis of Plaintiff's claims is an oral agreement that allegedly obligated Defendant to convey 50% of CWP's stock to Plaintiff. Thus, we conclude that the claim's gravamen is for enforcement of an express oral contract for the transfer of stock, not for the establishment of an implied partnership.[6] Thus, Plaintiff was required to prove his claim by only a preponderance of the evidence. *See Blasingame v. Am. Materials, Inc.*, 654 S.W.2d 659, 665 (Tenn. 1983) (preponderance of the evidence supported award of stock under oral agreement), *overruled on other grounds by Athlon Sports Commc'ns, Inc. v. Duggan*, 549 S.W.3d 107 (Tenn. 2018); *Hull v. Evans*, 439 S.W.2d 110, 112–13 (Tenn. Ct. App. 1968) (preponderance of evidence supported finding that there was no enforceable oral agreement for the purchase of stock); *see also Less, Getz & Lipman, P.L.L.C. v. Rainbow Ent.*, No. 02A01-9706-CV-00124, 1998 WL 100597, at *5 (Tenn. Ct. App. Mar. 10, 1998) ("[W]e conclude that the preponderance of evidence is in favor of the trial court's finding that the Stock Distribution Agreement did not contemplate the exchange of legal services for the issuance of stock."); *S. Cast Stone Co. v. Adams*, No. C.A. 1369, 1990 WL 198905, at *2 (Tenn. Ct. App. Dec. 12, 1990) (considering whether trial court's finding that contract was agreement for sale of stock was "supported by a preponderance of the evidence").

## B. Evidence at Trial

Having determined the applicable standard of proof, we next address Defendants' contention that Plaintiff failed to prove the existence of an enforceable contract because the evidence showed no mutual assent to the terms of agreement. Specifically, Defendants assert that (1) the parties gave "conflicting testimony as to what the terms of the parties' agreement were"; (2) the trial court found both Plaintiff's and Mr. Cooper's testimony credible; and (3) there was no documentary evidence "as to what contributions were required from [Plaintiff] in order to become a 50% shareholder of CWP."

---

[6] Significantly, Defendants have never denied the existence of an express oral agreement with Plaintiff; they simply dispute what the terms of the agreement were.

Like a person seeking to enforce a written contract, "[a] person seeking to enforce an oral contract must prove mutual assent to the terms of the agreement and must also demonstrate that the terms of the contract are sufficiently definite to be enforceable." *In re Est. of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006) (citations omitted).

As Defendants correctly point out, Plaintiff and Mr. Cooper gave conflicting testimony as to the terms of their agreement. Plaintiff testified that he was to receive 50% of CWP's stock once Mr. Cooper recouped his initial investment of $160,000:

> Q. . . . . So your understanding is all you would have to do is pay $5,350 a month to Cooper & Woodall Properties, and then after Mr. Cooper had collected or the company had collected $160,000 back from the second tenant, you would become a 50 percent shareholder? Is that the gist of your understanding about what this agreement is?
>
> A. Yes. Yes.
>
> .     .     .
>
> Q. Right, so you just make the payment on the part you're using for your sheet metal shop—
>
> A. No. I made the payment on his building that he was getting monthly (inaudible).
>
> Q. And then you get half the company once the other tenant pays $160,000, right?
>
> A. Yeah.

In contrast, Mr. Cooper testified that Plaintiff was to receive 50% of CWP's stock if he paid $200,000 within one year:

> Q. And what were your discussions with Mr. Woodall as to him being a member or shareholder of the Cooper & Woodall Properties company?
>
> A. I told him the way that I wanted to do it was the first year, actually I wanted $200,000 and to be paid the first year—within the first year. Okay, and then I would sign corporate paperwork over bringing him in as a 50 percent owner.
>
> Q. Okay, and was there any discussions with him as to him being an owner after you collect $160,000 from the second tenant?

A. I had no idea about collecting rent as a second tenant to get my money. That was never discussed.

Thus, the court was faced with conflicting evidence as to the terms of the parties' agreement. But contrary to Defendants' contention on appeal, the record indicates that the trial court credited Plaintiff's version of events over that of Mr. Cooper.

"[T]he trial court's findings with respect to credibility and the weight of the evidence . . . generally may be inferred from the manner in which the trial court resolves conflicts in the testimony and decides the case." *Richards v. Liberty Mut.*, 70 S.W.3d 729, 733–34 (Tenn. 2002). Here, the trial court declared that Plaintiff was a 50% owner of CWP. Thus, we infer that the trial court credited Plaintiff's testimony over Mr. Cooper's.

Defendants rely on comments in the trial transcript to show that the court found Plaintiff and Mr. Cooper equally credible. In particular, the court stated:

I didn't feel like, necessarily, either one of them was testifying to their benefit, necessarily all the times. Sometimes they wouldn't be testifying to— but they were trying to tell the truth. That's why I find them credible, but, confused.

However, "a trial court speaks through its written orders—not through oral statements contained in the transcripts—and . . . the appellate court reviews the trial court's written orders." *Buckley v. Elephant Sanctuary in Tenn., Inc.*, 639 S.W.3d 38, 55 n.15 (Tenn. Ct. App. 2021) (citing *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015)). Moreover, elsewhere in the transcript, the trial court expressly discredited Mr. Cooper's testimony on the terms of the agreement:

[E]verybody's been testifying building "A" was supposed to be paying the money into the CWP account and to be applied toward the [$160,000] down payment essentially made by Cooper. Cooper says he knew nothing about that part of the agreement, but, in all fairness, I think you did.

"Any conflict in testimony requiring a determination of the credibility of witnesses rests in the first instance with the trial court . . . ." *McGann v. United Safari, Inc.*, 694 S.W.2d 332, 336 (Tenn. Ct. App. 1985) (citations omitted). Appellate courts give considerable deference when reviewing factual findings based on credibility determinations because trial courts are "uniquely positioned to observe the demeanor and conduct of witnesses." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (quoting *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)). Accordingly, "appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Id.* (quoting *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)) (alteration in original). Defendants have not pointed to any clear and convincing evidence that contradicts the trial court's credibility assessment.

For these reasons, we conclude that there was sufficient evidence to support the trial court's finding that the parties had an enforceable contract whereby Plaintiff would receive a 50% interest in the business once Mr. Cooper recovered his downpayment. *See Davis v. Wilson*, 522 S.W.2d 872, 878 (Tenn. Ct. App. 1974) ("Where one witness testifies with positiveness to a fact found, there is material evidence upon which to rest the verdict of the jury." (citing *Standard Loan & Accident Ins. v. Thornton*, 40 S.W. 136 (Tenn. 1896))).[7]

## II. STATUTE OF FRAUDS

Defendants also argue that the contract was unenforceable because it fell within Tennessee's Statute of Frauds.[8]

"A contract generally needs not be in writing in order to be enforceable, unless it is of a kind required by the statute of frauds or other law to be written." *In re Est. of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006) (citing *Castelli v. Lien*, 910 S.W.2d 420, 426 (Tenn. Ct. App. 1995)). Relevant here, Tennessee's Statute of Frauds, Tennessee Code Annotated § 29-2-101, bars actions to enforce unwritten contracts that are "not to be performed within the space of one (1) year from the making of the agreement or contract." Tenn. Code Ann. § 29-2-101(a). We have determined, however, that the contract here is governed by Chapter 8 of the UCC, which expressly states that § 29-2-101 is inapplicable to contracts for the conveyance of securities:

> Notwithstanding the provisions of § 29-2-101, a contract or modification of a contract for the sale or purchase of a security is enforceable whether or not there is a writing signed or record authenticated by a party against whom enforcement is sought, even if the contract or modification is not capable of performance within one (1) year of its making.

Tenn. Code Ann. § 47-8-113.[9]

---

[7] The trial court found that Mr. Cooper recouped $27,000 before the Property was sold, and the court gave Mr. Cooper credit for the remaining $133,000 in its division of the sale proceeds that Mr. Cooper had received in 2021. Thus, the condition precedent—Mr. Cooper's recovery of his downpayment—was satisfied when the Property was sold.

[8] Defendants also argue that the Statute of Frauds barred Plaintiff from enforcing the purchase option in his lease with Decade. This argument is inapposite because Plaintiff was not seeking to enforce the purchase option, and the court referenced the option as only one of several facts that supported Plaintiff's version of events.

[9] Before 1998, the UCC contained its own statute of frauds, codified in Tennessee Code Annotated § 47-8-319, which barred actions to enforce unwritten contracts for the sale of securities. *See Wilson v.*

"A share or similar equity interest issued by a corporation, business trust, joint stock company, or similar entity is a security." *Id.* § 47-8-103(a). "That is so whether or not the particular issue is dealt in or traded on securities exchanges or in securities markets." Tenn. Code Ann. § 47-8-103 cmt. (b). Accordingly, "closely-held stock is a security within the meaning of Chapter 8 of the UCC." *Wakefield v. Crawley*, 6 S.W.3d 442, 445 (Tenn. 1999).

As stated, the gravamen of Plaintiff's claim is for enforcement of an express oral contract for the transfer of CWP stock. Thus, the contract was subject to Chapter 8 of the UCC, and the fact that the parties' agreement was unwritten did not bar Plaintiff's action.[10]

### III. JUDICIAL ESTOPPEL

Finally, Defendants argue that Plaintiff "should be judicially estopped from claiming he was anything other than a tenant of the premises" because he categorized his monthly payments to CWP as "rent expenses" on his tax returns and requested a backdated lease agreement from Mr. Cooper in 2021.

We find no merit to this contention because "judicial estoppel" pertains to "sworn statements made in the course of judicial proceedings, generally in a former litigation." *Sartain v. Dixie Coal & Iron Co.*, 266 S.W. 313, 316 (Tenn. 1924). As we have explained before,

> The doctrine of judicial estoppel prevents a litigant who has taken a position in one judicial proceeding from taking a contradictory position in another. Where one states under oath in former litigation, either in a pleading, a deposition or on oral testimony, a given fact as true, one will not be permitted to deny that fact in subsequent litigation, although the parties may not be the same. A pleading from a different case, if relevant, is a judicial admission and under the doctrine of judicial estoppel is conclusive evidence.

*Sibley v. McCord*, 173 S.W.3d 416, 419 (Tenn. Ct. App. 2004) (citations omitted).

There is no proof, or contention, that Plaintiff made a sworn statement in a former judicial proceeding that is contradictory to his claim in this proceeding. Thus, the doctrine of judicial estoppel is not applicable.

---

*Smythe*, No. M2003-00645-COA-R3-CV, 2004 WL 2853643, at *3 (Tenn. Ct. App. Dec. 10, 2004). Section 47-8-319 was repealed in 1997 and replaced with § 47-8-113, which expressly dispenses with the writing requirement. *See* Act of April 14, 1997, 1997 Tenn. Pub. Acts 109, 119; *Wilson*, 2004 WL 2853643, at *3.

[10] Because we have determined that the Statute of Frauds does not apply, we need not address Defendants' argument that "[t]he trial court incorrectly utilized the exception of partial performance in order to avoid application of the statute of frauds."

We also find this argument is misplaced and irrelevant. Here, Plaintiff sought a ruling that he was an owner of CWP. Whether or not Plaintiff was also a tenant of the Property owned by CWP is neither contradictory nor relevant. Thus, Plaintiff's categorization of his payments as "rent" under a lease agreement are not inconsistent with a claim of ownership interest in CWP.

### IN CONCLUSION

The trial court's judgment is affirmed, and this matter is remanded with costs of appeal assessed against the appellants, Cooper & Woodall Properties, Inc., and Robert D. Cooper.

FRANK G. CLEMENT JR., P.J., M.S.