PAUL K. KEIGAN *vs.* RICHARD W. GOODE.

No. 89-P-314.

Norfolk. May 10, 1990. - July 5, 1990.

Present: WARNER, C.J., ARMSTRONG, & GILLERMAN, JJ.

*Contract*, Sale of securities, What constitutes. *Frauds, Statute of.*

In an action for breach of an alleged oral agreement to sell all of the
corporate stock of an automobile dealership, the summary judgment
record revealed no genuine issue of material fact as to whether the de-
fendant admitted having entered into a binding agreement with the
plaintiff for sale of the stock, but instead established that the parties
had left the transaction unresolved. [777-779]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 30, 1987.

The case was heard by *Roger J. Donahue*, J., on a motion
for summary judgment.

*Frank C. Corso* for the plaintiff.

*Edward R. Wiest* (*Robert J. Baum* with him) for the
defendant.

GILLERMAN, J. In response to the plaintiff's claim that the
defendant Goode made and then violated his oral agreement
to sell all the outstanding corporate stock of an automobile
dealership, Dedham Nissan, Inc., Goode pleaded the Uni-
form Commercial Code - Investment Securities Statute of
Frauds. See G. L. c. 106, § 8-319, as appearing in
St. 1983, c. 522, § 5.[1] The judge granted summary judg-

---

[1]"§ 8-319. Statute of Frauds

"A contract for the sale of securities is not enforceable by way of action
or defense unless:

"(a) there is some writing signed by the party against whom enforce-
ment is sought or by his authorized agent or broker, sufficient to indicate
that a contract has been made for sale of a stated quantity of described
securities at a defined or stated price; . . . or

ment in favor of Goode, rejecting by implication the plaintiff's claim that the exception for admissions provided by G. L. c. 106, § 8-319(d), see note 1, *supra*, applied because Goode admitted in his deposition the price and quantity of the corporate stock, the closing date and the identity of the buyers. The plaintiff appealed.

The apparent simplicity of § 8-319(d) must be fitted to the complexity of a transaction involving the sale of a substantial business. Obviously agreement as to price and quantity are essential, but not necessarily sufficient, to form a sale-of-business contract. More may be required in order to satisfy the phrase, "a contract was made," in § 8-319(d); how much more depends on the nature of the transaction. See *Colt* v. *Franklin*, 361 Mass. 447, 452 (1972) (analogy may be made to Article 2 of the Uniform Commercial Code for definitions of "sale" and "price"); *Gruen Indus., Inc.* v. *Biller*, 608 F.2d 274, 278-279 (7th Cir. 1979). See also 1 Uniform Laws Annot., U.C.C., Comment to § 2-204(3) (Master ed. 1989) ("If the parties intend to enter into a binding agreement, this subsection recognizes that agreement as valid in law, despite missing terms, if there is any reasonably certain basis for granting a remedy").

It is within this context that the plaintiff, faced with Goode's motion for summary judgment, and unable to produce a signed agreement, had the burden of establishing a genuine issue whether Goode admitted having entered into a binding agreement with the plaintiff for the sale of the corporation's stock. See *Boudreau* v. *Landry*, 404 Mass. 528, 530 (1989). "The crucial showing," said the court in *Gruen Indus., Inc.* v. *Biller*, *supra* at 279, is whether the party relying on the Statute of Frauds has admitted that he "bound himself" to the transaction.

We turn then to the transaction and to the facts and admissions presented by the pleadings, affidavits, and depositions, resolving all doubts as to the existence of a genuine

---

"(d) the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract was made for the sale of a stated quantity of described securities at a defined or stated price."

issue of material fact against Goode, and giving the plaintiff the benefit of all favorable inferences that can be drawn from the evidence presented. See *Madden* v. *Estin, ante* 392, 394 (1990).

It is undisputed that the plaintiff began working for Goode in 1969 and that by 1984 he had been promoted to executive manager of Dedham Nissan, Inc. All of the outstanding stock was owned by Goode and his two sons. In 1986, Goode discussed a possible sale of the corporation to the plaintiff. That deal fell through when Goode rejected the plaintiff's proposed financing arrangements; thereafter the plaintiff concluded that he needed a partner with substantial resources. The first person proposed as the plaintiff's partner was not satisfactory because he lacked experience in the automobile business (this being a requirement of the manufacturer for approval of any transfer of the franchise). Finally, in October, 1986, the plaintiff began discussions with Laham (also a defendant in the Superior Court action but not involved in these summary judgment proceedings), an experienced Isuzu dealer.

The plaintiff's deposition testimony describes the events that followed the appearance of Laham in the deal. In late November, 1986, Goode, Laham, and the plaintiff met several times. The price did not change from the plaintiff's earlier discussions with Goode, and, at the conclusion of the first meeting, it was left that Laham's attorney would draw up a draft agreement. A draft of thirteen pages was prepared which included the many material representations, warranties, covenants and conditions ordinarily found in an agreement covering the purchase and sale of a business. However, the draft did not include the exhibits to which the draft referred and which would be required for an integrated agreement. Following this there was a Saturday meeting at which the principals and counsel for Goode and Laham were present and at which the draft agreement was reviewed. At some point early in the meeting Goode left, and the negotiations continued for the remainder of the day. The record is barren as to the course or the outcome of those negotiations.

At the conclusion of the meeting, Mr. Tarlow, Goode's attorney, announced that he wanted to "sleep on this overnight." The plaintiff asked, "Can we get it signed tomorrow?" Mr. Tarlow replied that he would let the plaintiff know if anything could be done the next day.

Nothing happened on the next day, Sunday, and on the following day, Monday, according to the plaintiff, Goode told the plaintiff that he had to see his accountants to make sure "that they approved of everything because he would not do anything without them looking at all the paperwork. . . ." There were no further negotiations among the three principals, and several days later Goode told the plaintiff that he had sold the business to Laham.

Goode's deposition testimony, upon which the plaintiff relies for the required admissions, was not substantially different from the plaintiff's deposition testimony. He confirmed that there was no disagreement on the price and that at the November meetings the putative buyers were the plaintiff and Laham, not the plaintiff alone. Goode also testified that he was uncertain whether a real estate company and a leasing company owned by him were to be included in the deal. His deposition testimony included virtually nothing about all the remaining terms and conditions of the transaction, which had been the subject of the detailed negotiations over the draft agreement. He did acknowledge, with considerable vagueness, that he assumed when he left the Saturday meeting that another draft of the agreement would be drawn up, but that only confirms the plaintiff's testimony — that as of late Saturday the transaction was still up in the air.

The judge was correct in granting summary judgment. On either the plaintiff's or Goode's version of events there never was any agreement. Goode admitted being present for part of a negotiating session, but there was no admission about what, if anything, had been negotiated to agreement. It is not even clear what Goode knew about the negotiations for which he was not present, or whether any new draft agreement, with exhibits, had been prepared.

What is apparent, however, from the plaintiff's own testimony, is that Goode insisted on reviewing the transaction with his accountants, and that he told the plaintiff that his approval would not be forthcoming without their approval. This is neither a case where agreement as to the quantity and price of the securities was all that was required to form a contract between the parties, nor is it a case where the parties had reached agreement in preliminary form, intending the contemplated written contract only to memorialize that to which they had already agreed. Compare *Goren* v. *Royal Invs., Inc.*, 25 Mass. App. Ct. 137, 141 (1987), with *Nelsen* v. *Rebello*, 26 Mass. App. Ct. 270, 273 (1988). Here the summary judgment record shows that the parties had left the transaction unresolved; nothing was signed because no final agreement had been reached. Goode never came close to admitting that he had "bound himself" to the plaintiff or to the plaintiff and Laham.

The summary judgment for Goode is affirmed.

*So ordered.*