512 S.E.2d 228

**Carleen. YOST and Billie J. Haun, Plaintiffs Below, Appellants,**

v.

**James C. HAUN, Defendant Below, Appellee.**

**No. 24749.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1998.

Decided Dec. 14, 1998.

Lawrence E. Morhous, Esq., Brewster, Morhous & Cameron, PLLC, Bluefield, West Virginia, Attorney for the Appellants.

C. William Davis, Esq., Richardson & Davis, Bluefield, West Virginia, Attorney for the Appellee.

PER CURIAM:

This case is before the Court upon the appeal of Carleen Yost and Billie J. Haun, from a March 10, 1997, order of the Circuit Court of Mercer County, which granted Appellee James C. Haun's motion to dismiss. Appellants assign as error the trial court's granting of Appellee's motion to dismiss. Appellants request that this Court remand the case with instructions for a new trial. For the reasons stated below, this case is reversed and remanded.

### FACTUAL BACKGROUND

On June 23, 1988, C.F. Haun, the father of James C. Haun and Carleen Yost, and the husband of Billie J. Haun, loaned $150,000 to Haun Motors, Inc. James C. Haun, was president of Haun Motors, Inc., and that business was embroiled in financial difficulties.

In return for his loan, C.F. Haun received a promissory note endorsed by James C. Haun. In this note, James C. Haun admitted the insolvency of Haun Motors and executed a pledge agreement by which he pledged 45% of his ownership interest in a real estate corporation known as Haun Holdings, Inc., to cover any inability of Haun Motors to repay the loan. At that time, the ownership interest of James C. Haun in Haun Holdings, Inc., was in the form of corporate stock certificates which were then being held by the Flat Top National Bank as security for a personal loan of that bank to James C. Haun. The total value of the pledged interest in Haun Holdings greatly exceeds the $106,000 remaining indebtedness on the promissory note.

C.F. Haun's death occurred on January 24, 1991. Dying testate, he specified in his will that his wife, Billie J. Haun, receive a ¼ interest in the June 23, 1988, promissory note. His daughter, Carleen Yost, was to receive a ⅝ interest in that same note, and his son, James C. Haun, a ⅛ interest in the note.

Appellants, Carleen Yost and Billie J. Haun, brought suit in the Circuit Court of Mercer County on June 7, 1995, attempting to get repayment for the loan and the benefit of the pledge agreement. James C. Haun did not file an answer, but rather, filed a motion to dismiss, maintaining that the pledge agreement was illegal. Subsequently, appellants filed an amended complaint, reit-

erating their right to benefit from the pledge agreement and insisting that, even if the pledge agreement was not valid, they should have the equitable right to benefit and, consequently, a constructive trust should be imposed on James C. Haun's possession of the stock certificates in Haun Holdings, Inc. James C. Haun renewed his motion to dismiss, which the Circuit Court of Mercer County granted by order of March 10, 1997. The appellants now appeal that order.

## STANDARD OF REVIEW

■ At the outset, we note that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). Both parties are in agreement that the Circuit Court of Mercer County considered matters outside the pleadings in granting the appellee's motion to dismiss. Therefore, under Rule 56 of the West Virginia Rules of Civil Procedure, this motion to dismiss will effectively be treated as a motion for summary judgment. We reiterate our standard for review of the entered judgment of the circuit court, mindful that, "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). We are cognizant that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Therefore, we will examine the facts to determine whether there was no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

## DISCUSSION

■ The appellee's motion to dismiss was based on the assertion that a valid pledge agreement did not exist because there was not a transfer of the stock certificates to C.F. Haun. The circuit court granted the appellee's motion to dismiss, in part, upon that basis. Specifically, the circuit court found that "[t]here is not an allegation of a valid pledge of James C. Haun's stock in Haun Holding, Inc. to C. Frank Haun for the reason that neither C. Frank Haun nor his estate held the stock certificates representing James C. Haun's stock in Haun Holding, Inc." [1] In their brief to this Court, the appellants assert that the circuit court erred in holding that a physical transfer of the stock certificates was required in order to create a valid pledge.

The appellee's motion to dismiss relied largely upon our holding in *Duncan Box & Lumber Company v. Applied Energies, Inc.*, 165 W.Va. 473, 270 S.E.2d 140 (1980). In that case, this Court held, in part, that "[t]he Uniform Commercial Code, W.Va.Code, 46–1–101, *et. seq.*, does not apply to a pledge or transfer of a bank account, and thus the validity of such an arrangement is tested under the common law." Syllabus Point 1, *Duncan Box, supra.* We noted that, under the common law, a valid pledge of intangible property, represented by an indispensable instrument, required that the possession of such instrument be transferred to the creditor pledgee. We concluded, that,

> in the case of a bank, which can create a deposit account, an intangible, and by specific agreement with the depositor ... can obtain exclusive control over such account so as to employ it as a security device for the bank's loans to the debtor, the entire arrangement is functionally equivalent to a common law pledge.

*Duncan Box*, 165 W.Va. at 481, 270 S.E.2d at 145 (footnote omitted). In the instant case, the circuit court applied *Duncan Box* and found that, since physical possession of the

1. The circuit court also found that,

The One Hundred Fifty Thousand Dollar ($150,000.00) Note to C. Frank Haun from Haun Motors, Inc., which is the subject of this action and which is an exhibit to plaintiffs' amended complaint, is an obligation of Haun

Motors, Inc. and not an obligation of James C. Haun, either as maker, guarantor or endorser. The parties do not address this portion of the order, and it is not relevant to this Court's disposition of the issue before us.

stock certificates was not transferred, there was no valid pledge agreement.

In his brief to this Court, the appellee now acknowledges that the agreement at issue is governed by the Uniform Commercial Code (hereinafter "UCC") provisions controlling secured transactions enacted in W.Va.Code § 46–9–101 (1963), *et seq.* Thus, the parties agree that the Circuit Court of Mercer County applied the wrong test to determine the validity of the pledge agreement. Accordingly, we now look to the UCC for the proper law in determining the issue before us.

As noted above, this case concerns a pledge agreement involving stock certificates. W.Va.Code § 46–9–102 (1974), states, in part:

(1) . . . this article [the UCC] applies

(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts; and also

(b) to any sale of accounts, or chattel paper.

(2) This article applies to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease or consignment intended as security . . . .

The UCC specifically applies to security interests in instruments when such interests are created by pledge. According to W.Va. Code § 46–9–105(1)(i) (1979), the definition of "instrument" includes a "certificated security." [2] Stock certificates, such as those involved here, are certificated securities. *See* W.Va.Code § 46–8–102(1)(a) (1979). [3] Therefore, it is unquestionable that the UCC governs the transaction at issue. Accordingly, we look to the UCC for the requirements of the creation of a valid and enforceable pledge agreement.

W.Va.Code § 46–9–203 (1979) [4] states that a security interest is created once:

(a) . . . . the debtor has signed a security agreement which contains a description of the collateral. . . .

(b) value has been given; and

(c) the debtor has rights in the collateral

Here, there is a written security agreement executed by the appellee identifying the collateral as stock certificates representing 45% of the appellee's ownership interest in a real estate corporation known as Haun Holdings, Inc. The appellee does not dispute that value was given for the certificates described, nor does he dispute that he has rights to those certificates. Indeed, he avers that he had previously pledged those very same certificates. Therefore, the elements for creation of a valid security agreement exist.

W.Va.Code § 46–8–321(1) (1979) states, in part, "[a] security interest in a security is enforceable and can attach only if it is transferred to the secured party or a person designated by him pursuant to a provision of section 8–313(1) [§ 46–8–313(1) ]." This code section sets forth several methods by which the transfer of a security interest may occur so as to make a security agreement enforceable. Applicable to the instant case is W.Va. Code § 46–8–313(1)(h) [5] which provides that transfer of a security occurs,

with respect to the transfer of a security interest where the debtor has signed a security agreement containing a description of the security, at the time a written notification, which, in the case of the creation of the security interest, is signed by the debtor (which may be a copy of the security agreement) or which, in the case of the release or assignment of the security interest created pursuant to this para-

---

2. Because the pledge agreement at issue was created in 1988, the applicable provision is the 1979 version of W.Va.Code § 46–9–105(1)(i). This code section was amended in 1995 and 1996.

3. This code section was amended in 1995.

4. This code section was amended in 1995.

5. According to W.Va.Code § 46–8–313(1), this code section applies to transfers of a security to a purchaser. This section, however, is deemed by W.Va.Code § 46–8–321(1) (1979) to control the validity of any transfer of "security interests in a security."

**310**

graph, is signed by the secured party, is received by ...

(ii) a third person, not a financial intermediary, in possession of the security, if it is certificated[.]

In the present case, the stock certificates were in the possession of Flat Top National Bank when the pledge was executed. Therefore, a valid transfer under the facts of this case required a written notification of the security agreement executed by the appellee and C.F. Haun, to Flat Top Bank, and signed by the appellee. Further, the language of W.Va.Code § 46–8–313(1)(h) implies that it is the *debtor's* responsibility to notify the holder of the security of the further encumbrance which he has placed upon it. Section 3 of the Official Comment to W.Va.Code § 46–8–313 (1979) states that "the notification to the 'bailee' [here Flat Top National Bank] must be written and must be signed by the *debtor* or by the secured party, according to whether the security interest is being *created* or released." (Emphasis added). In the case *sub judice*, because the interest was being created, the written notification was required to be signed by the debtor, who is the appellee.

However, as noted by the appellants, the circuit court dismissed their action without giving them the opportunity to establish that a proper written and signed notification to

Flat Top Bank was completed under the facts of this case. If a proper notification was made, there was a valid transfer pursuant to W.Va.Code § 46–8–313(1)(h)(ii). There remains, therefore, the need for further inquiry concerning whether the required transfer of the stock certificates occurred. We conclude, therefore, that summary judgment was improvidently granted because there was not sufficient opportunity for the discovery of facts.[6] Accordingly, we reverse the granting of the appellee's motion for summary judgement, and we remand this case for a determination of whether the requirements of a valid transfer were met under W.Va.Code § 46–8–313(1)(h)(ii).[7]

### CONCLUSION

Therefore, for the foregoing reasons, this case is reversed and remanded.

Reversed and Remanded.

Justice McGRAW did not participate in the decision of this case.

**6.** In his brief to this Court, the appellee asserts that despite the fact that the appellants claim lack of opportunity to present evidence, they failed to submit affidavits to the circuit court under Rule 56(e) or (f) stating that proper written notice was given. However, because the circuit court did not base its decision on the provisions of the UCC, it appears as though any such affidavits would not have been relevant to the circuit court's determination. Also, the appellants aver that it is "inequitable that Appellee, having convinced the circuit court to apply the wrong standard of law, now criticizes Appellants before this court for their alleged failure to prove facts under the correct law." We agree.

Further, in their brief to this Court, the appellants do not assert that proper written notice was given, and the appellee, in his brief, does not deny that proper notice was given. In light of these circumstances, we conclude that it is best to reverse and remand for further inquiry.

**7.** The appellants also assert that a constructive trust should be imposed on the stock certificates. Because we base our decision on the issue discussed above, we do not reach the issue of a constructive trust.