IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 28, 2015 at Knoxville

**KENNETH L. WILLIAMS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Montgomery County**
**No. 41200673     Michael R. Jones, Judge**

_____

**No. M2014-01527-CCA-R3-PC - May 26, 2015**

_____

The Petitioner, Kenneth L. Williams, pursuant to a plea agreement, pleaded guilty to aggravated sexual battery with a sentence of twelve years in the Tennessee Department of Correction. The Petitioner filed, *pro se*, a motion to withdraw his guilty plea and a petition for post-conviction relief. After a hearing, the post-conviction court issued an order denying the motion and dismissing the petition. On appeal, the Petitioner maintains that his guilty plea was not knowingly entered and that he received the ineffective assistance of counsel. After a thorough review of the record and relevant law, we affirm the post-conviction court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which D. KELLY THOMAS JR. and TIMOTHY L. EASTER, JJ., joined.

Wayne Clemons, Clarksville, Tennessee, for the Defendant-Appellant, Kenneth L. Williams.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; John W. Carney Jr., District Attorney General; and C. Daniel Brollier, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

The Petitioner was charged with two counts of rape of a child. Pursuant to a negotiated plea agreement with the State, the Petitioner pleaded guilty to one count of

aggravated sexual battery on July 12, 2013. At the guilty plea submission hearing, the State presented the following facts as a basis for the trial court's acceptance of the Petitioner's guilty plea:

> The State would introduce at sometime around Thanksgiving of 2011, [the Petitioner] was in [Department of Children's Services] custody. He went home at some point to stay with his family. [The victim], who was twelve years old at the time, was home and there was some sexual contact on the couch or in the bedroom. [The Petitioner] was interviewed, I believe, a couple months later by Detective Slaven (phonetic). The major issue would be apparently he acknowledges some contact did occur on the couch of the house with [the victim], when she was - - on that Thanksgiving.
>
> . . . .
>
> [H]e was in State's custody for four years before this, [for] having similar contact with the same victim. He was removed from the home and he went back home on this Thanksgiving and the contact occurred again.

Following this recitation of the facts, the trial court defined the elements of aggravated sexual battery, and the Petitioner confirmed his understanding of the charge against him. The trial court then reviewed the range of sentence for aggravated sexual battery and the specific statutory provisions required for sex crime convictions. The Petitioner again stated his understanding. The trial court reviewed the Petitioner's rights, and the Petitioner confirmed his waiver of those rights upon entry of a guilty plea. The Petitioner stated that he did not have any questions regarding the sentence or his decision to enter a guilty plea. The Petitioner stated that he understood everything and that he wanted to enter a guilty plea. The Petitioner affirmed that he was guilty of aggravated sexual battery, and the trial court found him guilty, ordering him to serve twelve years in the Tennessee Department of Correction.

On August 6, 2013, the Petitioner filed a *pro se* motion to withdraw his guilty plea and, on November 1, 2013, a petition seeking post-conviction relief. The post-conviction court held a hearing on the motion and the petition on June 19, 2014, and the parties presented the following evidence: The Petitioner testified that he was seventeen years old when this offense occurred and that his case was transferred from juvenile court to criminal court. As to his education, he stated that he had completed "all the way into the 12th grade" and that he believed he had performed well on any IQ or achievement tests administered. The Petitioner acknowledged that, before this offense, he had been charged in juvenile court with robbery and drug-related offenses. The Petitioner stated that, "to the best of [his]

2

understanding," if he had not pleaded guilty, the charges would have been dropped, and he would have gone "home." He acknowledged that he would have had to go to trial on the charges but explained that there was "no physical evidence."

The Petitioner testified that he told his attorney ("Counsel") about there being no physical evidence, but she responded that it was "too late for them to go back and try to find evidence." She told the Petitioner that the State would try to have him sentenced to twenty-five years if he proceeded to trial. The Petitioner said that he told Counsel about his foster family being potential witnesses who would testify that he "didn't do it." Counsel met with the witnesses, but the Petitioner never learned the outcome of those meetings.

The Petitioner testified that he met with Counsel approximately four times and that he felt that Counsel coerced him into accepting the State's offer. He explained that while in a visitation booth, he expressed to Counsel that he wanted to proceed to trial, and Counsel "hung up the phone in [his] face and kinda got an attitude about it, like she wanted [him] to ple[a]d guilty." The Petitioner said that, because of this interaction, the Petitioner pleaded guilty. He said that he did "not necessarily" understand the implications of his guilty plea, such as the amount of time he would be away from his family and the percentage of service of his sentence. The Petitioner testified that the victim had lied in juvenile court when she alleged the contact with the Petitioner.

On cross-examination, the Petitioner testified that he had previously been accused of rape involving the same victim, his younger sister. He agreed that he understood the charges and that, if convicted at trial, he could potentially receive a twenty-five year sentence to be served at 100%. The Petitioner agreed that, at the guilty plea submission hearing, he told the trial court that he wanted to enter the plea. He agreed that, during this plea colloquy, no one was intimidating or threatening him. The Petitioner denied admitting to the police that he had sex with the victim, maintaining that the officer "changed" his words. The Petitioner agreed that he chose to enter the plea rather than face the possibility of twenty-five to fifty years in prison.

Counsel testified that during her representation of the Petitioner on these two charges, she met with the Department of Children's Services ("DCS") attorney who was pursuing the DCS investigation of this matter. Counsel stated that she discussed with the Petitioner the difference between being tried as a juvenile and being tried as an adult. She also obtained juvenile records indicating a history of low IQ and special education, so she requested a forensic evaluation for competency. After the determination was made that the Petitioner was competent to stand trial and able to appreciate the wrongfulness of his conduct, Counsel contacted potential witnesses, including the Petitioner's foster family. The witnesses' statements created some question as to the State's timeline for the first count of rape of a

3

child, but their statements supported the occurrence in the second count. Counsel stated that she discussed in detail with the Petitioner her investigation and the evidence in the case. She told the Petitioner that his statement to police was the "most difficult" obstacle to his defense and that she did not believe there were grounds for suppression. The Petitioner's statement described the contact as consensual. Counsel explained to the Petitioner that a twelve-year-old cannot consent under the law.

Counsel testified that she believed the State's offer, one count of aggravated sexual battery serving a twelve-year sentence at 85%, was a "good settlement" of the charges. Counsel agreed that on the day of the guilty plea submission hearing, the Petitioner expressed hesitation about his decision to enter a guilty plea. Counsel stated that she was prepared to go to trial but advised the Petitioner that he had to make a decision because it was unlikely the State would keep the offer open until the trial date.

On cross-examination, Counsel denied having a conversation with the Petitioner where she angrily slammed down the telephone.

The trial court issued an order denying the Petitioner's motion to withdraw his guilty plea and dismissing the petition for post-conviction relief. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner asserts that the trial court should have granted his motion to withdraw his guilty plea because his plea was the result of coercion and, therefore, not knowing and voluntary. The Petitioner maintains that he received the ineffective assistance of counsel because Counsel: (1) failed to advise him of the difference between juvenile and adult criminal charges; and (2) coerced him to plead guilty. The State responds that the trial court properly exercised its discretion in denying the motion to withdraw the guilty plea and that the Petitioner has failed to prove that he received the ineffective assistance of counsel.

### A. Motion to Withdraw Guilty Plea

Generally, "a criminal defendant who has pled guilty does not have a unilateral right to later withdraw his plea either before or after sentencing." *State v. Phelps*, 329 S.W.3d 436, 444 (Tenn. 2010); *see also State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). Although the trial court "'should always exercise [its] discretion with caution in refusing to set aside a plea of guilty, to the end that one accused of crime may have a fair and impartial trial,'" *Phelps*, 329 S.W.3d at 444 (quoting *Henning v. State*, 201 S.W.2d 669, 671 (Tenn. 1947)), "the defendant bears the burden of establishing sufficient grounds for

4

withdrawing his plea." *Id.* (citing *Turner*, 919 S.W.2d at 355).

Whether a defendant should be allowed to withdraw his guilty plea is within the sound discretion of the trial court. *State v. Mellon*, 118 S.W.3d 340, 345-46 (Tenn. 2003) (citing *Henning v. State*, 201 S.W.2d 669, 671 (Tenn. 1947)). On appeal, "[t]he trial court's decision 'will not be reversed unless it clearly appears that there was an abuse of discretion.'" *State v. Crowe*, 168 S.W.3d 731, 740 (Tenn. 2005) (quoting *Henning*, 201 S.W.2d at 671). "An abuse of discretion exists if the record lacks substantial evidence to support the trial court's conclusion." *Id.* (citing *Goosby v. State*, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995)).

Rule 32(f) of the Tennessee Rules of Criminal Procedure provides the standards governing the withdrawal of a guilty plea. The rule is as follows:

> (1) Before Sentence Imposed. Before sentence is imposed, the court may grant a motion to withdraw a guilty plea for any fair and just reason.
>
> (2) After Sentence But Before Judgment Final. After sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct *manifest injustice*.

Tenn. R. Crim. P. 32(f) (emphasis added). The rule dictates that one of two standards is to be applied, and which standard governs depends on whether a defendant moves to withdraw his guilty plea before or after a sentence is imposed. *Crowe*, 168 S.W.3d at 740-41. As the Petitioner in the present case moved to withdraw his guilty plea after the sentence was imposed, the latter, more strenuous standard applies. *See id*. Accordingly, the trial court should have allowed the guilty plea to be withdrawn only to correct a "manifest injustice." *See id.*; *see also* Tenn. R. Crim. P. 32(f)(2).

Tennessee courts have allowed the withdrawal of guilty pleas to prevent manifest injustice where:

> (1) the plea was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed.2d 215 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant

5

was denied the effective assistance of counsel in connection with the entry of the plea.

*Crowe*, 168 S.W.3d at 742 (citations, footnotes, and internal quotations omitted). Further, manifest injustice may be found where the State's prosecutor has induced the plea through "gross misrepresentation." *Turner*, 919 S.W.2d at 355; *see also Swang v. State*, 42 Tenn. 212 (1865). Courts have also found that manifest injustice resulted from the trial court's failure to advise a defendant of the appropriate sentencing range, to apply the appropriate sentencing statute, or to inform a defendant of the consequences flowing from the guilty plea. *State v. Antonio Demonte Lyons*, No. 01 C01-9508-CR-00263, 1997 WL 469501, at *12 (Tenn. Crim. App., at Nashville, Aug. 15, 1997), *no Tenn. R. App. P. 11 application filed*.

The trial court found no reason to allow the Petitioner to withdraw his guilty plea. Our review of the record supports the trial court's decision. The plea submission hearing transcript indicates that the Petitioner understood his sentence and willingly entered the plea. The Petitioner was properly advised of all of his rights. Counsel, as well as the trial court, advised him of the sentence, and the Petitioner stated that he wanted to plead guilty to aggravated sexual battery. Further, the Petitioner confirmed at the June 19, 2014 hearing that, at the time of the guilty plea submission hearing, he chose to enter the plea rather than face the possibility of twenty-five to fifty years in prison. Counsel acknowledged that the Petitioner struggled with the difficult decision of whether to enter the plea but ultimately made the decision to accept the State's offer to serve twelve years at 85%. Accordingly, we cannot conclude that the trial court abused its discretion when it denied the Petitioner's motion.

### B. Post-Conviction Petition

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40

S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other

words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The Petitioner alleges that Counsel was "ineffective by failing to advise him of the difference between juvenile and adult criminal charges, and by coercing him to plea guilty even though he believed that he would be able to win at trial." In its order denying relief, the post-conviction court stated that there was "no showing that [Counsel] was ineffective counsel" and concluded that based upon the evidence she was "certainly effective in her representation."

We agree that the evidence does not show that Counsel was ineffective in her representation or coerced the Petitioner into pleading guilty. Counsel testified that she reviewed with the Petitioner his charges, the elements of the offense of conviction, and the sentencing range for aggravated sexual battery. Counsel explained to the Petitioner the difference between being tried as a juvenile and being tried as an adult. Counsel reviewed the results of her investigation of the case with the Petitioner and advised the Petitioner that his admission to the acts in his statement to the police would be a difficult obstacle to overcome at trial. Counsel negotiated a plea agreement with the State for one count of an offense with significantly less jail time than the charged offenses. This evidence supports the post-conviction court's conclusion that Counsel was "certainly effective in her

8

representation of the Petitioner."

The Petitioner testified that he pleaded guilty because Counsel slammed down a phone during a conversation when the Petitioner expressed his desire to proceed to trial. At the hearing, however, Counsel denied that this ever occurred. Counsel stated that she advised the Petitioner that it was his decision but that he would have to make the decision because the State would likely not hold the offer open until the day of trial. The guilty plea submission hearing transcript supports her testimony that the Petitioner willingly entered the guilty plea.

Accordingly, the Petitioner has failed to show by clear and convincing evidence that Counsel was deficient and that, but for counsel's errors, he would not have have pleaded guilty but proceeded to trial. The Petitioner is not entitled to relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied the Petitioner's motion to withdraw his guilty plea and the petition for post-conviction relief. Accordingly, we affirm the judgments of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE